IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SUSAN S. DePAOLA, Chapter 7 | ) | |
| Bankruptcy Trustee for Collins Signs, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:04CV267-W |
| | ) | (WO) |
| NISSAN NORTH AMERICA, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Collins Signs, Inc. commenced this action on March 19, 2004, bringing federal RICO claims and state law claims against numerous defendants.  Upon motion of Susan S. DePaola, bankruptcy trustee for Collins Signs, Inc. in Bankruptcy Case No. 03-10501 pending in this court, the court ordered that the trustee be substituted in this action as the plaintiff.  This action is presently before the court on the trustee's motion to withdraw reference and the motions to dismiss filed by the defendants.

Were the court to grant defendants' motions to dismiss at this juncture – to the extent that those motions are Rule 12(b)(6) motions directed to the merits of plaintiff's claims – it would be required to dismiss without prejudice and allow plaintiff another opportunity to amend the complaint.  Further, it is clear that plaintiff's presently pending motion for leave to amend (Doc. # 131) is due to be granted, under the liberal standard of Fed. R. Civ. P. 15(a).  Therefore, defendants' motions to dismiss will be denied without

prejudice, to the extent those motions are Rule 12(b)(6) motions addressed to the merits of plaintiff's claims, and plaintiff will be allowed to amend her complaint. However, the court will proceed to address a number of preliminary issues presented by the pleadings in this Order.

<strong>Subject Matter Jurisdiction and the Motion to Withdraw</strong>

The Nissan defendants argue that this court lacks subject matter jurisdiction over plaintiff's claims because: (1) plaintiff was required to bring the claims as compulsory counterclaims to Nissan North America's proof of claim in the bankruptcy court;[1] and (2) "absent a withdrawal of the reference as to the Plaintiff's 'counterclaim' against NNA," the district court may not proceed with this litigation. (Doc. # 118, pp. 9-10).[2]

To the extent defendants contend that this court lacks subject matter jurisdiction over any matter properly before the bankruptcy court, they are incorrect. The statutory provision regarding bankruptcy jurisdiction provides that "the *district courts* shall have original and exclusive jurisdiction of all cases under title 11," and that "the *district courts* shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a),(b)(emphasis

---

[1] The court takes judicial notice of the fact that NNA and Ken-Mac have each filed a proof of claim in the Collins Signs bankruptcy action, as reflected in the record of the bankruptcy proceeding. F.R.E. 201.

[2] The remaining defendants have adopted the arguments presented by the Nissan defendants.

added).[3]   This cause of action belongs to the bankruptcy estate and could conceivably result in additional assets to augment the estate for the benefit of its creditors.   It is clear that this court has, at a minimum, "related to" bankruptcy jurisdiction over this matter.[4]

While they suggest that the court lacks subject matter jurisdiction "absent withdrawal of the reference as to the Plaintiff's 'counterclaim,'" defendants also contend that plaintiff's motion to withdraw the reference is irrelevant to the pending motion.   (Doc. # 118, pp. 10, 33).   Defendants maintain that the complaint bases jurisdiction only on

---

[3]   See also 28 U.S.C. § 151 ("In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district.").

[4]   In the complaint, the trustee asserts that "[t]he claims asserted herein arise under Title 11 U.S.C., arise in a case under Title 11 U.S.C., or are related to a case under Title 11 U.S.C. The court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334, federal bankruptcy jurisdiction." (First Amended Complaint, ¶ 51).   In In re Lemco Gypsum, Inc., 910 F.2d 784 (11th Cir. 1990), the Eleventh Circuit adopted the following test for determining the existence of "related to" jurisdiction:

> "[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy.   The proceeding need not necessarily be against the debtor or against the debtor's property.   An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."

Id. at 788 (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir. 1984)). "The key word in the Lemco Gypsum/Pacor test is 'conceivable,' which makes the jurisdictional grant extremely broad." In re Toledo, 170 F.3d 1340, 1345 (11th Cir. 1999).

diversity of citizenship and federal question.[5]   They further argue that, because plaintiff's claims should have been asserted as compulsory counterclaims to Nissan's proof of claim, the instant action cannot base its jurisdictional authority on 28 U.S.C. § 1334.  (Id.).

Even assuming that defendants are correct that the compulsory counterclaim rule could divest this court of subject matter jurisdiction, their assertion that the rule applies to the present situation is without merit.  Defendants argue that "[b]y operation of Rule 13(a), the Plaintiff's contract-based claims are compulsory counterclaims to NNA's proof of claim."  (Doc. # 118, p. 10).  However, Rule 7013, the bankruptcy rule which incorporates Rule 13 of the Federal Rules of Civil Procedure, is applicable only in adversary proceedings.  See Bankruptcy Rule 7013.  The filing of a proof of claim does not commence an adversary proceeding.  See In re: The Charter Company, 876 F.2d 866, 874 (11th Cir. 1989)("The filing of a proof of claim and the debtor's objection thereto do not constitute an adversary proceeding."); Id. at 874 n. 12 (rejecting argument that there was an adversary proceeding before the debtor filed its objection (i.e. after the proof of claim was filed) and citing In re Johns-Manville Corp., 53 B.R. 346, 352 (Bankr. S.D.N.Y. 1985) for the proposition that "the '7001 list [the Bankruptcy Rule defining adversary proceedings] does not include a category for the recovery of claims against the debtor'"); Collier on

---

[5]  In the motion to dismiss previously filed by the NNA defendants in response to plaintiff's original complaint (which also, in paragraph 51, asserted bankruptcy jurisdiction), defendants argued that the bankruptcy rules apply to this action because "the Plaintiff principally relies in its Complaint upon jurisdictional averments sounding in bankruptcy."  (Doc. # 4, p. 4).

*Bankruptcy* (15th ed. rev.), § 7013.03 ("The filing of a proof of claim is not an adversary proceeding, it does not commence an adversary proceeding and it is not within the standards prescribed in Rule 7001 as to the types of actions which are denominated as adversary proceedings.).  Thus, NNA's filing of its proof of claim did not implicate the compulsory counterclaim rule.[6]

The district court may refer cases within its bankruptcy jurisdiction to the bankruptcy judges for the district.  28 U.S.C. § 157(a).  In this district, the court has done so by a general order of reference.  That order provides that "all cases under title 11, United States Code, and all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the Bankruptcy Judges for this District."  (General Order of Reference, April 25, 1985).  Plaintiff argues that the general order of reference does not apply where there is also an independent basis for federal jurisdiction. However, plaintiff cites no authority for this proposition, and the court has found none.  This cause of action is an adversary proceeding which – being "related to a case under title 11" – was referred

---

[6] Defendants NNA and NMAC did commence an adversary proceeding against Collins Signs in the bankruptcy court, regarding liens placed by Collins Signs on the property of Nissan dealers. (Bankruptcy Docket # 33, Adversary Proceeding No. 03-1032).  However, the adversary proceeding was resolved by settlement before Collins Signs was required to respond to the complaint.  See Adversary Proceeding Docket # 14 (stipulation between the parties including a provision granting Collins Signs an extension of time in which to plead or otherwise respond to the complaint); AP Docket # 22 (Order dismissing adversary proceeding).  Therefore, even assuming the claims in this action would have been compulsory counterclaims in that proceeding, the compulsory counterclaim rule was not implicated.

to the bankruptcy judges of this court by operation of the general order of reference. This fact does not, however, deprive this court of jurisdiction.[7] It means only that the court must determine whether to withdraw the reference to the bankruptcy court.

The court will exercise its discretion to withdraw this adversary proceeding under the permissive withdrawal provision of 28 U.S.C. § 157(d). At least as to the non-creditor defendants who have no claim pending in the bankruptcy proceeding, the trustee has a right to a trial by jury,[8] and the claims are non-core. Under these circumstances, if the proceeding remained in the bankruptcy court, any dispositive motions with respect to those claims would have to be resolved by the mechanism of recommendation to this court

_____

[7] See Anderson v. Federal Deposit Insurance Corporation, 918 F.2d 1139, 1142 (4th Cir. 1990)(general order of reference did not deprive district court of jurisdiction even in the absence of an express order of withdrawal; court "effectively withdrew" the matter from the bankruptcy judge by allowing substitution of the trustee as plaintiff); The Home Insurance Company of Illinois, 154 F.3d 739, 741-42 (7th Cir. 1998)("A district judge should not hear as an original matter any part of a bankruptcy case it has referred to a bankruptcy judge without first withdrawing the reference 'in whole or in part, . . . on its own motion or on timely motion of any party, for cause shown.' 28 U.S.C. § 157(d). No motion was made, and no cause was shown, in this case. But a judge's failure to follow orderly procedures for allocating bankruptcy matters within a district court does not deprive the court of subject-matter jurisdiction.").

[8] Although the bankruptcy case was originally commenced by an involuntarily petition, Collins Signs, in its answer to the petition, consented to entry of an Order of Relief and concurrently filed a voluntary Chapter 11 petition. (See Exhibit to Ken-Mac's initial motion to dismiss, Doc. # 16-5; Bankruptcy Docket ## 12, 13). The court rejects defendants' argument that, simply by availing itself of the bankruptcy process, Collins Signs (and, therefore, the trustee) lost all entitlement to a jury trial in any action brought on behalf of the estate. See Germain v. Connecticut National Bank, 988 F.2d 1323, 1330 (2nd Cir. 1993); In re Jensen, 946 F.2d 369, 373-74 (5th Cir. 1991), abrogation on other grounds recognized by In re El Paso Electric Co., 77 F.3d 793 (5th Cir. 1993).

by the bankruptcy judge and, if any party objected to the recommendation, by *de novo* review in this court.   28 U.S.C. § 157(c)(1).   This process obviously requires that two judges, rather than one, become familiar with the evidence and issues in the case.   Further, any jury trial would have to be conducted by this court, absent consent of all the parties. In addition, as to most of the defendants, the predominant claims are the federal RICO claims.   While consideration of these claims may not rise to a level sufficient to justify mandatory withdrawal, they are an additional factor weighing in favor of permissive withdrawal.   The facts alleged in support of the trustee's claims against the non-creditor defendants substantially overlap with those alleged with regard to her claims against the creditor defendants.   Therefore, assuming that the trustee has no jury trial right on the latter claims, it is appropriate to withdraw the reference as to all defendants in this action. Accordingly, the trustee's motion to withdraw the reference of this adversary proceeding will be granted.

### The Effect of Collins Signs' Race to the Courthouse

*Collins Signs' Capacity to Commence This Action*

At 4:50 p.m. on March 18, 2004, United States Bankruptcy Judge William Sawyer announced from the bench that he was granting a motion to convert the Collins Signs bankruptcy case to a Chapter 7 proceeding.   (Transcript of March 18, 2004 proceedings, p. 201).   The following morning, at 8:07 a.m., Collins Signs, Inc. as Debtor in Possession,

7

filed the complaint in this action.   (Doc. # 1).   Judge Sawyer issued his written order converting the case, and the Trustee was appointed, on March 19, 2004.  (Bankruptcy Doc. ## 632, 634).

The defendants argue that Collins Signs did not have the capacity or authority to file the complaint in this action on March 19, 2004 because Judge Sawyer ruled on March 18, 2004 that the Collins bankruptcy case was converted to a Chapter 7 proceeding.  Thus, they contend that this action is due to be dismissed.   As defendants suggest, Judge Sawyer's verbal order was sufficient to effect the conversion of the case.  In addition, "'[i]t is well-settled that the right to pursue causes of action formerly belonging to the debtor – a form of property "under the Bankruptcy Code" – vests in the trustee for the benefit of the estate,'" and that "the debtor has no standing to pursue such causes of action." Bauer v. Commerce Union Bank, 859 F.2d 438, 441 (6th Cir. 1988)(citations omitted); see also 11 U.S.C. § 323; Bankruptcy Rule 6009.

However, on July 21, 2004, this court entered an order substituting the bankruptcy trustee, Susan S. DePaola, as the plaintiff in this action pursuant to Fed. R. Civ. P. 17(a)(Doc. # 62).   Rule 17(a) provides that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; *and such ratification, joinder, or substitution*

8

*shall have the same effect as if the action had been commenced in the name of the real party in interest.*"   Fed. R. Civ. P. 17(a)(emphasis added).   The plain language of the rule renders defendants' arguments on this point moot.   By operation of Rule 17, this action proceeds as though it had been commenced by the trustee. [9]   It appears that the Nissan defendants may have recognized this fact, and therefore intended to abandon their argument regarding sufficiency of process and service of process by not raising it in their second motion to dismiss.   The Nissan defendants originally argued that the service of process was tainted by Collins Signs' failure to advise the Clerk of the Court that it lacked the authority to have the complaint served.   (See Doc. # 12, p. 23; Doc. # 14, pp. 21-22).   However, to the extent they or any of the other defendants continue to assert this argument by incorporating previous motions and briefs, it is also rendered moot by the

---

[9]   The constitutional standing arguments raised by the Ken-Mac defendants are without merit.   The legal entity owning the causes of action presented in the complaint was the bankruptcy estate, both before and after conversion. See 11 U.S.C. § 541; In re Jamko, Inc., 240 F.3d 1312, 1313 n. 1 (11th Cir. 2001)("When a petition for Chapter 11 relief is filed, a bankruptcy estate is created. The bankruptcy estate is a separate legal entity.")(citations omitted); In re Jess, 169 F.3d 1204, 1207 (9th Cir. 1999)("A bankruptcy estate becomes a legal entity when a bankruptcy petition is filed. Notwithstanding certain specified exceptions, the bankruptcy estate includes all legal and equitable interest in property held by the debtor at the time of filing.")(citations omitted); see also In re Icarus Holding, LLC, 391 F.3d 1315 (11th Cir. 2004)("Section 541 establishes a debtor's bankruptcy estate and includes 'all legal and equitable interests of the debtor in property as of the commencement of the case.' This includes legal causes of action the debtor had against others at the commencement of the bankruptcy case.")(citations omitted).   The fact that the claims on behalf of the bankruptcy estate – which continued to exist before and after Judge Sawyer's conversion order – may have been filed by the wrong entity (or non-entity) does not present an issue of constitutional proportion. Further, as plaintiff argues, Collins Signs, Inc. has at all times remained the debtor and a legal entity, even if it was no longer in possession of the estate.

9

order permitting substitution of the trustee.

*Rule 12(f)*

Defendants also contend that the actions of Collins Signs in filing the complaint after Judge Sawyer's March 18, 2004 ruling "warrants the striking of the offending pleading," including the amended complaint filed by the trustee, pursuant to Fed. R. Civ. P. 12(f). (Doc. # 118, p. 18). This rule provides that the court may, upon motion or *sua sponte*, "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Defendants do not argue that any particular matter set forth in the complaint or amended complaint is redundant, immaterial, impertinent, or scandalous. Rather, defendants contend that the complaint and amended complaint are due to be stricken because Collins Signs "flout[ed] a federal judge's ruling." (Doc. # 118, p. 19). The court is not persuaded that Rule 12(f) is intended to be used to exact punishment for "sharp practice" as argued by defendants. Further, the original complaint has been superseded by the amended complaint. The trustee entered an appearance in this case on May 4, 2004 after obtaining Judge Sawyer's approval to employ attorney William S. Stone to continue this litigation, and filed the amended complaint in October 2004. (Doc. ## 107-109; Bankruptcy Doc. ## 649, 864). The amended complaint was not filed in contravention of any order by Judge Sawyer. Accordingly, the court declines to strike the complaint and amended complaint pursuant

10

to Rule 12(f).

## Judicial Estoppel

The Image-Point and Turner & Townsend defendants argue that, under the doctrine of judicial estoppel, plaintiff is barred from bringing her claim in this court because Collins Signs failed to include the claim (as to these defendants) in the disclosure statement filed by Collins Signs in the bankruptcy action on September 26, 2003 and the first amended disclosure statement filed on December 15, 2003. (See Exhibit C to Doc. # 111, Docs. ## 319 and 378 in bankruptcy action). While Collins Signs referred to claims against the Nissan defendants and "others" in its statement, it did not specifically name these defendants. See, e.g., Disclosure Statement at p. 11-13 ("[S]pecial Litigation Counsel have advised Collins Signs, Inc. that in their opinion good grounds exist to commence and prosecute a civil action against Nissan North America, Inc.[,] Nissan Motor Acceptance Corporation, and others asserting claims for (1) Breach of contract, (2) Breach of covenants of good faith and fair dealing, (3) Conversion, (4) Trespass to personal property, (5) Fraud and deceit, and (6) Violations of the Racketeering Influenced and Corrupt Organizations Act (RICO).").

The Eleventh Circuit has described the doctrine of judicial estoppel as follows:

"Judicial estoppel is an equitable concept invoked at a court's discretion" and designed "to prevent the perversion of the judicial process." Burnes [v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002)](citation omitted). Although the Supreme Court has noted that "the circumstances under which

> judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," <u>New Hampshire v. Maine</u>, 532 U.S. 742, 750, 121 S.Ct. 1808, 1815, 149 L.Ed.2d 968 (2001)(citations omitted), we generally consider two factors. "First it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." <u>Burnes</u>, 291 F.3d at 1285.

<u>Parker v. Wendy's International, Inc.</u>, 365 F.3d 1268, 1271 (11th Cir. 2004). Under this standard, even if Collins Signs were the real party in interest and remained the plaintiff in this case, its assertion of claims in the present action against the non-Nissan defendants is not clearly inconsistent with its disclosure statements to the Bankruptcy Court. Further, since Collins Signs advised the Bankruptcy Court of its possible claims against Nissan and "others," the court cannot conclude that the failure to name all of the defendants specifically was "calculated to make a mockery of the judicial system." In any event, the real party in interest in this action is the trustee. The trustee, who was not appointed until after the disclosure statements were filed, has made no inconsistent statement under oath to the Bankruptcy Court. Judicial estoppel, therefore, is not applicable and does not bar the trustee's claims in this action. <u>Parker</u>, *supra*.

### Personal Jurisdiction

#### *Defendants James R. Martin and Audie Lester*

Defendants Martin and Lester contend that they are entitled to dismissal pursuant to Fed. R. Civ. P. 12(b)(2) because this court lacks personal jurisdiction over them. (Doc.

# 40).  Martin and Lester have both filed affidavits stating that they reside in and work in the state of Tennessee, and indicating a lack of "minimum contacts" with the state of Alabama.  (Exhibits 1 and 2 to Doc. # 40).  Plaintiff responds that these defendants' contacts with the state of Alabama are irrelevant because plaintiff asserts claims under RICO, which authorizes nationwide service of process.  Plaintiff argues that the appropriate inquiry, therefore, is whether these defendants had sufficient contacts with the United States.  (Doc. # 67).  In their reply, Martin and Lester contend that the RICO claims are due to be dismissed for failure to state a claim and that, if the RICO claims are dismissed but other claims remain against these defendants, this court may assert personal jurisdiction over them only to the extent authorized by the Alabama Long Arm Statute.  (Doc. # 103, p. 20).

According to the Eleventh Circuit,

> [w]hen a district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must establish a *prima facie* case of personal jurisdiction over a nonresident defendant. Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir.1988). A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. Id. The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. Id. Finally, where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff.

Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990); see also Mutual Service Insurance Company v. Frit Industries, Inc., 358 F.3d 1312, 1319 n. 6 (11th Cir. 2004).  "Where, as here,

the defendant submits affidavits to the contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction.   Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff."   Meier v. Sun International Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)(citations omitted).

The court need not reach the parties' arguments regarding RICO or the Alabama long arm statute to resolve the issue of personal jurisdiction over Martin and Lester.   In both the original complaint and the amended complaint, plaintiff asserts that this court has bankruptcy jurisdiction pursuant to 28 U.S.C. § 1334.   (Doc. # 1, ¶ 51; Doc. # 109, ¶ 51).   It is clear that this court has, at a minimum, "related to" bankruptcy jurisdiction over this matter.   Thus, nationwide service of process is available under Bankruptcy Rule 7004(d). See Bankruptcy Rule 7004(d)("The summons and complaint and all other process except a subpoena may be served anywhere in the United States."); Rule 7004(f)("If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F.R. Civ. P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.");

Diamond Mortgage Corporation of Illinois v. Sugar, 913 F.2d 1233 (7th Cir. 1990)(holding, in a case brought in district court with both diversity and bankruptcy "related to" jurisdiction, that Bankruptcy Rule 7004 provided for nationwide service of process); Owens-Illinois, Inc. v. Rapid American Corp., 124 F.3d 619 (4th Cir. 1997)(Bankruptcy Rule 7004 applied in action removed to district court on basis of "related to" jurisdiction).

Since nationwide service of process is authorized in this case, whether Martin and Lester are subject to *in personam* jurisdiction depends upon whether this court's assertion of such jurisdiction comports with the due process clause of the Fifth Amendment. See Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935 (11th Cir. 1997). The Fifth Amendment inquiry focuses on the fairness and reasonableness of requiring the defendant to litigate in a particular forum. Id. at 945-46. Defendants' affidavits address their lack of "minimum contacts" with the state of Alabama. However, in conducting the Fifth Amendment analysis, a court must "examine a defendant's aggregate contacts with the nation as a whole rather than his contacts with the forum state." Id. at 946-47 (citation omitted). "A defendant's 'minimum contacts' with the United States do not, however, automatically satisfy the due process requirements of the Fifth Amendment. There are circumstances, although rare, in which a defendant may have sufficient contacts with the United States as a whole but will be unduly burdened by the assertion of jurisdiction in a faraway and inconvenient forum." Id. at 947 (footnotes omitted). "[I]t is only in highly

unusual cases that inconvenience will rise to a level of constitutional concern. . . . The burden is on the defendant to demonstrate that the assertion of jurisdiction in the forum will 'make litigation "so gravely difficult and inconvenient" that [he] unfairly is at a "severe disadvantage" in comparison to his opponent.'" Id. at 947-48 (citation omitted).

Martin and Lester reside in a state adjoining Alabama. "'As a practical matter . . . state lines cannot provide an accurate measure of the burdens that would be imposed on a defendant by requiring him to defend an action in a particular forum. There is nothing inherently burdensome about crossing a state line.'" Id. at 946 (citation omitted). Defendants have not advanced any other basis for concluding that litigating in this state is burdensome or inconvenient. Martin and Lester have not met their burden of demonstrating that litigating in Alabama presents a "constitutionally significant inconvenience" and, therefore, have not demonstrated an "infringement of their individual liberty interests protected by the Due Process Clause of the Fifth Amendment." Id. at 948. Their motion to dismiss, to the extent it is based on lack of personal jurisdiction, is due to be denied.

### *Defendant Turner & Townsend Group*

Turner & Townsend Group argues that it is entitled to dismissal pursuant to Fed. R. Civ. P. 12(b)(2) because it is not subject to either general or specific personal jurisdiction in this court.

Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint.  Madara v. Hall, 916 F.2d 1510, 1516 n. 7 (11th Cir.1990), citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn. 8 & 9, 104 S.Ct. 1868, 1872 nn. 8 & 9, 80 L.Ed.2d 404 (1984).  It has long been recognized that a court has the minimum contacts to support specific jurisdiction only where the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).  The requirement that there be minimum contacts is grounded in fairness.  It assures that "the defendant's conduct and connection with the forum State [is] such that he should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

General personal jurisdiction, on the other hand, arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated.  The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state.  Borg-Warner [Acceptance Corp. v. Lovett & Tharpe, Inc., 786 F.2d 1055, 1057 (11th Cir. 1996)], citing Hall, 466 U.S. at 412-13, 104 S.Ct. at 1872-73          .

Consolidated Development Corporation v. Sheritt, 216 F.3d 1286 (11th Cir. 2000).

Plaintiff alleges that Martyn Fisher and defendant Mathew Cryer were "the actual, implied, or apparent agent[s] or employee[s] of Turner  & Townsend Group and [are] otherwise associated with it" (Amended Complaint, ¶¶ 27, 72) and, further, that Turner & Townsend (USA) is the alter ego of Turner & Townsend Group (id., ¶ 24).   Plaintiff alleges that Fisher and Cryer performed acts related to the causes of action in his complaint.  (See, e.g.,Complaint, ¶¶ 74, 99, 119, 133, 137, 143, 149, 163-64, 166).   Plaintiff has alleged a *prima*

*facie* case of personal jurisdiction over Turner & Townsend Group.

In support of its motion, Turner & Townsend Group relies on the declaration of Robert Hewitt. In summary, Hewitt states, *inter alia*, that Turner & Townsend Group does not conduct any business in the United States and that Turner & Townsend (USA) – which does conduct business in the United States – is a separate and distinct corporate entity from Turner & Townsend Group. Hewitt's declaration asserts that it "has no employees residing or domiciled in the United States" and has not "contracted with persons residing in the United States . . . to act on its behalf with respect to marketing, distributing or servicing any of T & T Group's clients," but does not specifically address plaintiff's allegations regarding Fisher and Cryer.[10]  (Hewitt dec., ¶ 10).  In response to Hewitt's declaration, plaintiff points to internet websites operated by Turner & Townsend Group:  www.turnerandtownsend.com and www.tctb.co.uk  (see Hewitt dec., ¶ 12).[11] Drawing reasonable inferences in plaintiff's favor, the court concludes that the content of various pages on these websites suggests that Turner & Townsend Group does conduct business within the United States and, specifically, that it is involved in the Nissan

---

[10]  It is not necessary for an employee of a foreign corporation to either reside in or be domiciled within the United States to perform acts within the forum subjecting the corporation to jurisdiction.

[11]  Because these websites are authenticated by Hewitt's declaration, the statements on the site are admissions by a party opponent which may be considered by the court.  See F.R.E. 801(d)(2)(B).  Defendant objects to plaintiff's interpretation of the statements on the website, but not to the admissibility of the statements.

contract at issue in the present case.

Turner & Townsend (USA) maintains an office in Gardena, California, in the greater Los Angeles area.  (Hewitt dec. ¶ 20; see Turner & Townsend Directory of Offices found at http://www.turnerandtownsend.com/pdfs/offices.pdf, copy attached to Doc. # 139 (listing Turner & Townsend's Gardena office as "Los Angeles")).   A newsletter published on the website operated by Turner & Townsend Group includes the following report:

**New Frontiers in the USA**

> As well as a new oil & gas base in Houston for Pace Project Services, Turner & Townsend is pushing even further west with the opening of another US office in California.  The Los Angeles office will allow *the Group* to provide a full range of project management, cost management, facilities management and contract services to Clients throughout North and Central America.  One of *the Group's* senior project managers is already heading up a major retail roll-out for an international Client throughout the US, Canada, and Mexico.

(See Exhibit 2 to Doc. # 144, copy of Turner & Townsend News, Issue 21, p. 3, found at http://www.turnerandtownsend.com/pdfs-cm/construction-matters-21.pdf)(emphasis added).  The front page of the next issue of the newsletter bears the headline "Nissan rolls out brand through North America," and it reports that

> Nissan North America Inc has appointed Turner & Townsend to provide project, programme and cost management advice for its dealership facility and visual identity programme across the US, Canada, and Mexico.

> *     *     *     *     *

This appointment cements the long-standing relationship between Turner &

Townsend and Nissan following *the Group's* successful corporate identity roll-out to some 4,200 main Nissan dealer outlets across 26 European countries in the late 1990s.

The North American roll-out will be managed initially from Turner & Townsend's new office in Los Angeles.

(See Exhibit 3 to Doc. # 144, copy of Turner & Townsend News, Issue 22, p. 1, found at http://www.turnerandtownsend.com/pdfs-cm/construction-matters-21.pdf)(emphasis added).

A later issue of the newsletter includes an article entitled "Roll-outs gather speed," authored by Martyn Fisher.  The article states that "Martyn Fisher is a Director of Turner & Townsend Europe and leads *the Group's* international roll-out team."  (See Exhibit 5 to Doc. # 144, copy of Turner & Townsend News, Issue 27, p. 3, found at http://www.turnerandtownsend.com/pdfs-cm/construction-matters-21.pdf)(emphasis added).  The article includes a large photograph featuring the Nissan project, and a sidebar article entitled "Nissan in the Forefront."  That article reports, in part:

As part of a long term goal to re-position the Nissan brand, the Japanese car giant is implementing a new, global Visual Identity programme and creating an Innovative retail environment in its dealership network.

Based on Turner & Townsend's involvement in the Network 2000 retail project, which won a number of major awards in the 1990s for brand consistency across some 4,200 sites in 28 European countries, Nissan North America appointed T & T in September 2000 to roll out their new ID across 1,400 sites in the US, Canada and Mexico.

The project is in many ways a model demonstration of *the Group's* approach.

* * * * *

> To overcome wide geographical and time zone disparities, Turner &
> Townsend has built a web enabled virtual office to process both facility and
> sign schemes at any time of day from its seven satellite offices.

(Id.)(emphasis added).

In a supplemental declaration, Hewitt states that the term "Turner & Townsend," as used on the website, is "for purposes of brand recognition only, and does not refer to the specific legal entity Turner & Townsend Group." (Hewitt supplemental dec., ¶ 5). While this may be true for many of the references on the website, there are also, as demonstrated above, a number of specific references to "the Group" on this site. The court recognizes that the newsletter's references to "the Group" may well be a product of imprecise drafting. However, the court is required, on the present motion, to construe the evidence and draw all reasonable inferences in favor of the plaintiff. Madara, supra. In view of this deferential standard, the allegations and evidence before the court permit the conclusions that:

1. Martyn Fisher leads Turner & Townsend Group's international roll-out program. (Newsletter, Issue 27, supra).

2. Fisher was initially designated as the director for the Nissan re-imaging program. (Amended Complaint, ¶ 74).[12]

3. The Nissan roll-out was initially managed from the Los Angeles, California office.

---

[12] Defendant has not introduced any evidence contradicting this allegation.

21

(Newsletter, Issue 22, *supra*).

4.  The Group's senior project manager was "already heading up a major retail roll-out" – which reasonably appears to be the Nissan roll-out – through or using the new Los Angeles office, the opening of which "allowed the Group to provide a full range of project management, cost management, facilities management and contract services to Clients throughout North and Central America." (Newsletter, Issue 21, *supra*).

5.  In October 2001, Fisher was involved in a "kick-off" meeting held in Gardena, California, at which Collins Signs executed the sign contract at issue in the present lawsuit (Amended Complaint, ¶¶ 96, 99). Also during that month, Fisher met with John Collins to view the sign prototype. (Id., ¶ 109).

To constitute minimum contacts for purposes of specific jurisdiction, the defendant's contacts with the forum must: (1) "'be related to the plaintiff's cause of action or have given rise to it'"; (2) "'involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum'"; and (3) "'be such that [the defendant] should reasonably anticipate being haled into court there.'" SEC v. Carillo, 115 F.3d 1540, 1542 (11th Cir. 1997)(citation omitted). The Group's contacts with the applicable forum (the United States) through Fisher, as set forth above, are related to the plaintiff's causes of action. Additionally, the Group's action in having its senior project manager "heading up" the Nissan roll-out from or through the Los Angeles office

sufficiently demonstrates "purposeful availment" of the privileges of doing business in the forum and, further, provides a basis for finding that the Group should reasonably have expected to be "haled into court" in this country on the basis of its actions in connection with the project.  The evidence in this case is sufficient to conclude that the Group – on its own, not through Turner & Townsend (USA) – has had sufficient contacts with the United States to support the assertion of specific personal jurisdiction.[13]

> Since the court has found that there were sufficient minimum contacts,
>
> the question that remains is whether this is "one of those rare cases in which minimum requirements inherent in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction . . . ."

Carillo, supra, 115 F.3d at 1547 (citations omitted); see also Republic of Panama, supra, 119 F.3d at 945.  As the Eleventh Circuit has indicated,

> [i]n order to evaluate whether the Fifth Amendment requirements of fairness and reasonableness have been satisfied, courts should balance the burdens imposed on the individual defendant against the federal interest involved in the litigation. . . .
>
> We note, however, that courts must engage in this balancing only if a defendant has established that his liberty interests actually have been infringed. . . . Only when a defendant challenging jurisdiction has 'presented a compelling case that . . . would render jurisdiction unreasonable,' should courts weigh the federal interest favoring the exercise of jurisdiction.

Republic of Panama, supra, 119 F.3d at 946-947.

---

[13]  For this reason, it is not necessary to determine whether the evidence demonstrates that Turner & Townsend (USA) acted as either the alter ego or the agent of Turner & Townsend Group.

23

As noted above, the defendant bears the burden of demonstrating that the assertion of jurisdiction in this forum will "'make litigation "so gravely difficult and inconvenient" that [he] unfairly is at a "severe disadvantage" in comparison to his opponent.'" Id. at 948. In the present motion, defendant has argued only that it lacks minimum contacts with the forum. It has not argued or demonstrated that litigation in this forum would be "gravely difficult."[14] See Carillo, supra, 115 F.3d at 1547 (burden of a foreign national having to litigate in the United States ameliorated by "'modern methods of transportation and communication'")(citation omitted). Thus, defendant has not met its burden and the court need not conduct a balancing inquiry.

The court concludes that plaintiff has presented sufficient evidence to defeat a motion for directed verdict and, thus, that Turner & Townsend Group's motion to dismiss for lack of personal jurisdiction is due to be denied at this juncture.[15]

### Venue

The Turner & Townsend defendants seek to enforce the venue provision in the

---

[14] Nor has it argued that service of process was insufficient.

[15] The court's ruling on this issue turns on disputed facts. However, the court declines to set this matter for an evidentiary hearing at this time. Plaintiff has not yet had an opportunity to conduct discovery. The Group and Turner & Townsend (USA) are represented by the same counsel. Further, it is likely that any discovery directed to Turner & Townsend Group will substantially overlap with that directed to Turner & Townsend (USA). Therefore, it is not unduly burdensome to require the Group to participate in discovery in this action. If defendant wishes to pursue this defense further, it may renew its motion at the conclusion of discovery. Cf. Chalwest (Holdings) Limited v. Ellis, 924 F.2d 1011, 1014 (11th Cir. 1991).

contract between Nissan North America and Collins Signs, which specifies that "any litigation pertaining to the interpretation or enforcement of this Agreement shall be filed in and heard by the state or federal court with jurisdiction to hear such disputes in the County of Orange, State of California . . . ." (Doc. # 111, pp. 29-30; <u>see</u> Sign contract, Doc. # 111-2, ¶ 20.6; Louvers and Entry contract, Doc. # 111-3, ¶ 22.5).  However, the signatories to the contracts have not sought to enforce this provision, and the Turner & Townsend defendants have not provided the court with any authority suggesting that they have standing to seek enforcement of the agreement.    Accordingly, to the extent these defendants seek transfer of this action to California, their motion is due to be denied.

## CONCLUSION

For the foregoing reasons, it is ORDERED that:

(1) Plaintiff's motion to withdraw the reference of this adversary proceeding (Doc. # 49) is GRANTED.

(2) The motion to strike plaintiff's motion to withdraw the reference (Doc. # 51) is DENIED.

(3) The motions to dismiss filed prior to plaintiff's first amended complaint (Docs. ## 11, 13, 16, 23, 25, 40, 54, 55) are DENIED as MOOT based upon the court's order allowing the amendment.

(4) The motion of the Ken-Mac defendants for an extension of time (Doc. # 120) is

DENIED as MOOT.

(5) Plaintiff's motion to amend/correct (Doc. # 131) is GRANTED to the extent that the court will allow plaintiff leave to amend the complaint.   However, the court strongly suggests that plaintiff reconsider the allegations of the proposed amendment in light of the arguments raised by the defendants in their motions to dismiss.   Plaintiff may file her amended complaint **on or before September 21, 2005**.   Plaintiff has had the benefit of extensive briefing by defendants as to the merits of her claims and is advised that any claim in this new amendment which was brought in the initial or first amended complaint and which was the subject of motions to dismiss filed by any of the defendants may be dismissed with prejudice if determined to be legally insufficient.

(6)  Plaintiff's motion for leave to file limited reply (Doc. # 144) is GRANTED.

(7)  The defendants' motions to dismiss (Docs. ## 110, 113, 117, and 122) are DENIED for the reasons set forth above as to subject matter jurisdiction, personal jurisdiction, judicial estoppel and venue, and – as to the merits of plaintiff's claims –  in view of the order allowing further amendment to the complaint.

It is further ORDERED that, in responding to plaintiff's complaint, defendants may not incorporate any portion of any of their previous motions or briefs by reference.

DONE, this 29th day of August, 2005.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE